UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WANDA SEALEY,

                    Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                              14-CV-3S
D. OLSZEWSKI, D. SPEYER, K. OLIVER,
R. RATAJCZAK, and SERGEANT OSBORNE,[1]

                    Defendants.

# I. INTRODUCTION

In this action, pro se plaintiff Wanda Sealey alleges that the defendant corrections officers illegally denied her access to the Wyoming Correctional Facility by subjecting her to harassing and abusive security-screening procedures when she tried to visit her inmate brother.  Sealey contends that Defendants violated her First, Fourth,[2] Thirteenth, and Fourteenth Amendment rights.  She brings her claims under 42 U.S.C. §§ 1983, 1985, and 1986.

Presently before this Court is Defendants' Motion to Dismiss Sealey's complaint for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket No. 6.)   For the following reasons,

---

[1] Defendants Speyer, Oliver, and Ratajczak have not been served.  Sealey also named the State of New York and the Superintendent of Wyoming Correctional Facility as defendants, but the Honorable John T. Curtin dismissed them from this case on October 2, 2014.  See Order, Docket No. 3 (holding that "[b]ecause plaintiff has failed to allege any allegations regarding the Superintendent or State of New York, the claims against those defendants must be dismissed.")  The Clerk of Court is directed to terminate the State of New York and the Superintendent of Wyoming Correctional Facility as defendants pursuant to Judge Curtin's Order.

[2] Although not specifically asserted in Sealey's complaint, Judge Curtin, upon initial screening under 28 U.S.C. § 1915(e)(2), found that Sealey's allegations raise a possible Fourth Amendment claim.  See Order, Docket No. 3 (finding that "[t]hough it is not clear that plaintiff will be able to prove an unreasonable search under the Fourth Amendment, the complaint can go forward at this stage").

Defendants' motion is granted in part and denied in part, and Sealey will be directed to file an Amended Complaint.

## II. BACKGROUND

The following facts, drawn from Sealey's complaint, are assumed true for purposes of Defendants' motion.

Sealey is an African-American woman who resides in Niagara Falls, New York. (Complaint, ¶ 2.)  Defendants are Caucasian correctional officers employed at Wyoming Correctional Facility ("Wyoming") in Attica, New York.  (Complaint, ¶¶ 3, 8.)  Sealey's brother is an inmate at Wyoming.  (Complaint, ¶ 9.)

On December 21, 2013, Sealey and her sister Mildred Sealey went to visit their brother at Wyoming.  (Complaint, ¶ 9.)  When Sealey and her sister arrived at the security post, Defendants told Sealey that she could not enter the visiting area wearing Spandex pants.  (Complaint, ¶ 10.)  Sealey told Defendants that this was her first visit to Wyoming and that she was unfamiliar with the visiting procedures.  (Complaint, ¶ 15.) Sealey then changed into an extra pair of pants that Mildred Sealey had in her car, returned to the security post wearing the new pants, and then set off the metal detector when she passed through it.  (Complaint, ¶ 10.)

After the metal detector signaled, Defendant Olszewski told Sealey that she could not enter the visiting area unless she removed the new pants she had just changed into.  (Complaint, ¶ 10.) He also told Mildred Sealey, who had already successfully passed through the security post, to proceed to the visiting area. (Complaint, ¶ 12.)  Before she did so, however, Mildred Sealey gave Sealey a long overcoat, which Mildred Sealey had previously passed through the metal detector.

2

(Complaint, ¶ 11.)   Mildred Sealey then went to the visiting area as directed. (Complaint, ¶ 13.)

Meanwhile, Sealey went into a bathroom, took off her pants, put on the overcoat (with only underwear on underneath), and emerged to try to clear security for a third time.   (Complaint, ¶¶ 11-13, 25.)   She was the only visitor in the security-post area. (Complaint, ¶¶ 13, 16.)   Sealey placed the pants in a bin and proceeded through the metal detector, which once again signaled.   (Complaint, ¶ 13.)   Knowing that Sealey had no pants on under her overcoat, Defendant Olszewski told Sealey to remove her coat or she could not enter the visiting area.   (Complaint, ¶ 13.)   Defendants did not use an available handheld metal detector to inspect Sealey, despite Defendant Olszewski knowing that only the buckle of the coat was setting off the metal detector. (Complaint, ¶ 14.)

Sealey refused to remove her coat, because doing so would have left her "virtually naked."   (Complaint, ¶ 13.)   Instead, Sealey got dressed and left the facility. (Complaint, ¶ 13.)   As she departed, "Defendants were all laughing and treating [Sealey] with great disrespect, ridicule, and appeared intent on gaining sexual gratification in abusing her."   (Complaint, ¶¶ 13, 16.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest.   See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).   Since

Sealey is a pro se litigant, this Court has considered her submissions and arguments accordingly.

Sealey's first, second, and sixth claims pertain to her allegations that Defendant's violated her right to visit her brother.  Sealey's first claim is that Defendants violated her right to association under the First Amendment (Complaint ¶ 25); her second claim is that Defendants violated her right to due process under the Fourteenth Amendment (Complaint, ¶ 21); her sixth claim is that Defendants violated her Equal Protection and Due Process rights under the Fourteenth Amendment (Complaint, ¶ 25).  Sealey brings these claims under 42 U.S.C. §1983.

Sealey's third claim, which she also brings under 42 U.S.C. §1983, is that Defendants violated her Thirteenth Amendment right to be free from involuntary servitude. (Complaint, ¶ 22.)

Sealey's fourth and fifth claims allege that the way in which Defendants treated her at the security post violated her right to equal protection of the laws.  Sealey's fourth claim is that Defendants violated her rights under the Fourteenth Amendment by acting in concert, motivated by "racial, invidious discrimination animus," to deny her equal protection of the laws. (Complaint, ¶ 23.)  Sealey brings this claim under 42 U.S.C. §1985 (3).  Her fifth claim is that Defendants knew about the conspiracy alleged in her fourth claim but neglected or refused to prevent the harm caused by that conspiracy. Sealey brings this claim under 42 U.S.C. § 1986.

Sealey's seventh claim is that Defendants, while acting as employees of the State of New York, intentionally or negligently injured her, thereby giving rise to a tort claim against the State of New York.  (Complaint, ¶ 26.)

4

In addition, Sealey's complaint alleges a Fourth Amendment unreasonable-search claim, brought under 42 U.S.C. §1983, as recognized in Judge Curtin's Order. (See Order, Docket No. 3.)

Defendants move to dismiss each of Sealey's claims for failure to state a claim upon which relief can be granted, under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

## A.      Rule 12 (b)(6) Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a

5

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; FED. R. CIV. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In pro se actions, the United States Supreme Court has rejected the idea that the plausibility standard requires amplification with factual allegations to render the claim plausible. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). In Erickson, the Supreme Court reversed the dismissal of a prisoner's Eighth

Amendment claim, holding that the court of appeals had "depart[ed] from the liberal pleading standards" of Rule 8(a).  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson, 127 S.Ct. at 2200). Although the Court did not clarify when the plausibility standard requires factual amplification, it noted that "a pro se complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 127 S.Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

**B.      Sealey's § 1983 Claims**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140.  Here, Sealey asserts claims under the First, Fourth, Thirteenth, and Fourteenth Amendments.

**1.      Personal Involvement**

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F.Supp. 2d 275, 280 (S.D.N.Y. 1999).   Moreover, it is well settled in this Circuit that personal

7

involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000). The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  The doctrine of *respondeat superior* is inapplicable in § 1983 actions.  See Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981).

At the outset, this Court notes that Sealey fails to allege that Defendant Sergeant Osborne was personally involved in the incident on December 21, 2013.  Rather, she alleges that Osborne was "made aware of the civil rights violation" but failed to investigate or handle it appropriately.  (Complaint, ¶¶ 6, 17.)  This allegations sounds in *respondeat superior*, which does not apply in § 1983 cases.  See Polk County, 454 U.S. at 325.  Sealey's § 1983 claims against Osborne must therefore be dismissed.[3]

## 2.     First Amendment Freedom-of-Association Claim
##        (First Cause of Action)

Interpreting her complaint to raise the strongest arguments it suggests, Sealey alleges that Defendants violated her First Amendment right to freedom of association by unreasonably refusing to allow her to visit her brother.

---

[3] This same basis for dismissal applies to Sealey's § 1983 claims against the Superintendent of Wyoming Correctional Facility.  (Complaint, ¶¶ 7, 17.)

In the prison-visitation context, the visitor's rights are necessarily tied to the inmate's.  See Thornburgh v. Abbott, 490 U.S. 401, 410 n.9, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (rejecting separate standards for cases implicating the rights of non-inmates); Hernandez v. McGinnis, 272 F. Supp. 2d 223, 226-27 (W.D.N.Y. 2003) (applying same standard to right of inmates and non-inmates).

"An inmate does not retain rights inconsistent with proper incarceration."  Overton v. Bazzetta, 539 U.S. 126, 131, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).  And "freedom of association is among the rights least compatible with incarceration."  Id.; see also Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125-26, 97 S.Ct. 2532, 2537-38, 53 L.Ed.2d 629 (1977) (holding that the right to freely associate with non-inmates is obviously curtailed by confinement).  Nonetheless, inmates retain a limited right of association that cannot be restricted unless the restriction bears a rational relationship to legitimate penological interests.  See id. at 131; Caldwell v. Goord, No. 09-CV-945(Sr), 2013 WL 1289410, at *5 (W.D.N.Y. Mar. 27, 2013) (noting that restrictions on visitation do not infringe First Amendment right of association where "the restrictions bear a rational relation to legitimate penological interests and alternate means of communication are available").

Reading the complaint to raise the strongest arguments that it suggests, Sealey alleges that Defendants refused to screen her properly and denied her visitation rights, not for any legitimate penological purpose, but because she is African-American and she would not reveal her unclothed self to Defendants or participate in their effort to seek sexual gratification from her.  (Complaint, ¶¶ 13, 14, 16, 25.)  Sealey therefore states a sufficient First Amendment freedom-of-association claim for purposes of

defeating Defendants' motion.   Cf. Mills v. Fischer, 497 Fed.Appx. 114, 2012 WL 4215891, at *2 (2d Cir. Sept. 21, 2012) (noting that "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation").

### 3.    Fourteenth Amendment Due Process Claim
   (Second Cause of Action)

Sealey alleges that Defendants violated her Fourteenth Amendment right to due process by unreasonably refusing to allow her to visit her brother.  This claim must be dismissed.

Sealey has a cognizable Fourteenth Amendment Due Process claim only if she possesses a liberty interest in visiting a prison inmate.  But "[c]ourts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to contact visits." Hernandez v. Sposato, No. 14-CV-4593 (JFB)(ARL), 2015 WL 4097784, at *4 (E.D.N.Y. July 8, 2015) (collecting cases); see also Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (holding that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause").  Consequently, Sealey has no protected liberty interest in visiting an inmate.  She therefore fails to state a Fourteenth Amendment Due Process claim, and thus her second cause of action must be dismissed.  See Sposato, 2015 WL 4097784, at *5.

**4.      Thirteenth Amendment Involuntary Servitude Claim
          (Third Cause of Action)**

Sealey alleges that Defendants violated her Thirteenth Amendment right to be free from slavery and involuntary servitude.  This claim must be dismissed.

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, §1.  The Supreme Court defines involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  United States v. Kozminski, 487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988).

To state a claim under the Thirteenth Amendment, a plaintiff must allege that she has been subjected to compulsory labor through the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.  See id.; McGarry v. Pallito, 687 F.3d 505, 510-11 (2d Cir. 2012).  Sealey's complaint contains no facts indicating or suggesting that she was compelled to perform any labor for Defendants or anyone else at Wyoming under any sort of threat.  Sealey alleges only that Defendants caused her "feelings of being treated as a slave being abused by racist white males intent on gaining sexual and racial motivated gratification from their abuse of me."  (Complaint, ¶18.)  Sealey does not allege that she was forced to work in any way.  This claim must therefore be dismissed.

5.   **Fourteenth Amendment Equal Protection Claim[4]**
     **(Sixth Cause of Action)**

Sealey alleges that Defendants violated her Fourteenth Amendment equal protection rights by refusing to allow her to visit her brother because she is African-American or because she refused to reveal her unclothed self to them and otherwise participate in their efforts to seek sexual gratification from her.

The Fourteenth Amendment provides, in pertinent part, that "[no] State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.   "The Equal Protection Clause requires the government to treat similarly situated people alike."  Philip v. Brown, No. 9:10-CV-643 (FJS/TWD), 2012 WL 1155778, at *5 (N.D.N.Y. Mar. 13, 2012) (citing City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).  Its purpose "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)).

To state an equal protection claim based on membership in a protected class such as race, a plaintiff must allege that she was treated differently than similarly situated persons and that the disparate treatment was based on her race.  See Aquart v. Jacobowski, No. 3:08CV1562 (VLB), 2010 WL 3023878, at *5 (D.Conn. Aug. 2, 2010); Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

---

[4] Sealey's sixth cause of action also asserts a Fourteenth Amendment due process claim, which, for the reasons already stated, is not cognizable.

In the absence of membership in a protected class, equal protection claims may be brought as class-of-one claims, which exist "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

Here, the allegations in Sealey's complaint arguably give rise to equal protection claims.  First, she alleges that Defendants refused to let her visit her brother because she is African-American. (Complaint, ¶¶ 14, 16, 23.)  Second, she alleges that Defendants intentionally treated her differently from others seeking to clear the security area, and that there is no rational basis for the difference in that treatment.  (Complaint, ¶¶ 14, 16, 25.)

Missing from Sealey's complaint are allegations concerning similarly situated people, although Mildred Sealey is arguably similarly situated for purposes of a class-of-one claim considering Sealey's allegation that Mildred Sealey was permitted to clear security with her overcoat, but Sealey was not.  (Complaint, ¶ 11.)  In addition, Sealey asserts in her opposition to Defendants' motion that Defendants cleared at least one white woman through security using the handheld metal detector, yet refused to use the handheld detector to clear her.  (Complaint, ¶ 14; Plaintiff's Opposition, Docket No. 9, ¶ 21.)  It therefore appears that with an opportunity to amend her complaint, Sealey may be able to assert equal protection claims.  This Court will therefore permit her to amend her complaint to add facts in further support of her equal protection claims.  See Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (requiring that pro se litigants be given

the opportunity to amend their complaints at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated).

### 6.      Fourth Amendment Unreasonable Search Claim

Sealey does not specifically allege a Fourth Amendment unreasonable search claim in her complaint, but as noted, Judge Curtin found that a liberal construction of her complaint requires considering such a claim.  See Order, Docket No. 3.  This claim, however, must be dismissed.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV.   But a party must actually be searched to raise a Fourth Amendment claim.  See Davis v. Rodriguez, 364 F.3d 424, 435 (2d Cir. 2004) ("it is axiomatic that a plaintiff alleging an unreasonable search must produce some evidence that a search has actually taken place"); Thorne v. Jones, 765 F.2d 1270, 1275 (5th Cir. 1985) ("As the other Thornes were not searched, they have no fourth amendment claims . . .").   Here, Sealey's allegations make clear that she refused to submit to Defendants' proposed search.  (Complaint, ¶¶ 13, 25.)  Consequently, Sealey does not state a claim under the Fourth Amendment.  Any such claim is therefore dismissed.

### C.      Sealey's § 1985 (3) and § 1986 Claims
### (Fourth and Fifth Causes of Action)

Sealey alleges that Defendants deprived her of equal protection of the laws "while acting in concert with each other and motivated in part by racial, invidious discriminatory animus to deny an African-American woman Equal Protection of the law." (Complaint, ¶ 23.)

Section 1985 (3) prohibits "two or more persons in any State or Territory [to] conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."  Like § 1983, this provision creates no substantive rights; it only provides a civil cause of action for the deprivation of a federal right.  See Knight v. City of New York, 303 F.  Supp.  2d 485, 501 (S.D.N.Y. 2004).

To state a conspiracy claim under 42 U.S.C. § 1985 (3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of a citizen of the United States."  Hadid v. City of New York, 15-CV-19 (WFK)(RER), 2015 WL 7734098, at *11 (E.D.N.Y. Nov. 30, 2015).  In addition, a plaintiff must allege "that the conspiracy was motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions."  Id.

For a § 1985 (3) claim to survive a motion to dismiss, a plaintiff "must do more than just state a vague and conclusory allegation that Defendants entered into an unlawful agreement."  Id. (citing Trombley v. O'Neill, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013).  Rather, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve an unlawful end."  Trombley, 929 F. Supp. 2d at 97; Guarneri v. West, 518 F. Supp. 2d 514, 519-20 (W.D.N.Y. 2007).

Here, Sealey fails to allege the facts necessary to support a conspiracy claim under § 1985 (3).  Her allegations of a conspiracy are entirely conclusory, and they are

inconsistent with the factual basis of her claims.  The complaint contains no allegations supporting any inference that Defendants communicated with one another or otherwise agreed to deprive Sealey equal protection of the law.   No specific communications between Defendants are alleged nor is any coordinated effort among Defendants. There is simply no factual basis from which to conclude that Defendants came to a meeting of the minds to achieve an unlawful end.  See Trombley, 929 F. Supp. 2d at 997.

Rather, Sealey alleges that Defendant Olszewski acted alone while the other corrections officers present "looked on" and failed to prevent Defendant Olszewski from violating her civil rights.  (Complaint, ¶ 5.)  She also alleges that Mildred Sealey passed through the security post with no problems, which is inconsistent with Sealey's claim that Defendants conspired to deprive African-American women of their civil rights. Although Sealey alleges that the other defendants joined together to ridicule her, this is not sufficient to state a § 1985 (3) conspiracy claim.  Accordingly, Sealey's 1985 (3) conspiracy claim is dismissed.

Relatedly, because § 1986 imposes liability on an individual with knowledge of discrimination prohibited by § 1985, there can be no § 1986 claim without a valid § 1985 claim.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 222 n.28, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (characterizing § 1986 as "a remedy against individuals who share responsibility for conspiratorial wrongs under § 1985 by failing to make reasonable use of their power to prevent the perpetration of such wrongs"); see also Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (noting that "a § 1986 claim is contingent on a valid § 1985 claim").  Consequently, since Sealey's § 1985 claim is dismissed, her §

1986 claim must be dismissed as well.  Graham, 89 F.3d at 82 (dismissing § 1986 claim in absence of a valid § 1985 claim).

**D.    Sealey's Tort Claim**
**(Seventh Cause of Action)**

In her seventh cause of action, Sealey alleges a tort claim against the State of New York.  (Complaint, ¶ 26.)   Judge Curtin has already dismissed this claim.  See Order, Docket No. 3.  In any event, this Court reiterates that Sealey's tort claim against the State of New York is barred by the Eleventh Amendment.

It is well settled that the Eleventh Amendment bars suits against states and state agencies.  See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100-02, 104 S.Ct. 900, 908-909, 79 L.Ed.2d 67 (1984); Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 49 (2d Cir. 1999).  The Eleventh Amendment "renders an unconsenting state immune from lawsuits in federal court brought by that state's own citizens or citizens of another state." A.A. v. Bd. of Educ. of the Cent. Islip Union Free Sch. Dist., 196 F. Supp. 2d 259, 264 (E.D.N.Y. 2002) (citing Burnette v. Carothers, 192 F.3d 52, 57 (2d Cir. 1999); New York City Health & Hosp. Corp. v. Perales, 51 F.3d 129, 134 (2d Cir. 1995)).  Further, it bars "courts from exercising jurisdiction over lawsuits against a state unless [the state] waive[s] sovereign immunity or Congress has expressly and validly abrogated that immunity." A.A., 196 F. Supp. 2d at 264 (citing Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); Tuchman v. Connecticut, 185 F. Supp. 2d 169, 172 (D.Conn. 2002)).  The protection from suit provided by the Eleventh Amendment extends to legal and equitable relief.   Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92

L.Ed.2d 209 (1986); see also Yoonessi v. State Univ. of New York, 862 F. Supp. 1005, 1012 (W.D.N.Y. 1994) ("[I]n the absence of the state's consent to be sued in a federal forum, or congressional authorization to do so, any legal or equitable claims based on alleged constitutional violations brought by private parties against the state or one of its agencies or departments are proscribed by the eleventh amendment.") (citing Pennhurst, 465 U.S. at 100).

The State of New York has not waived its Eleventh Amendment immunity protection. Consequently, Sealey's seventh cause of action is dismissed.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Sealey's complaint is granted in part and denied in part. Sealey's second, third, fourth, fifth, and seventh causes of action, along with any cause of action grounded in the Fourth Amendment, are dismissed for failure to state a claim upon which relief may be granted.

Sealey's first cause of action may proceed as alleged in the complaint.

Sealey's sixth cause of action is subject to dismissal if Sealey fails to sufficiently allege facts in support thereof or fails to file an amended complaint as directed. Sealey is advised that her amended complaint must contain *both* her surviving First Amendment claim and her amended Fourteenth Amendment equal protection claims, since the amended complaint will completely replace the original complaint (which is why Sealey must re-assert her first claim). The amended complaint must also comply with the requirements of Rule 15.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED in part and DENIED in part.

FURTHER, that the Clerk of Court is directed to terminate the State of New York, the Superintendent of Wyoming Correctional Facility, and Sergeant Osborne as defendants in this case pursuant to this Decision and Order and Judge Curtin's October 2, 2014 Order (Docket No. 3).

FURTHER, that Plaintiff is granted leave to file an amended complaint consistent with this decision within 45 days of the entry date of this Decision and Order.

FURTHER, that Plaintiff's failure to file an amended complaint within 45 days of the entry date of this Decision and Order will result in this case proceeding only as to Plaintiff's First Amendment freedom-of-association claim, as currently alleged.

SO ORDERED.

Dated:       December 28, 2015
             Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge