UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WANDA SEALEY,

                         Plaintiff,

v.

                                                                                  14-CV-3S(Sr)

D. OLSZEWSKI,
D. SPEYER,
K. OLIVER, and
R. RATAJCZAK,

                         Defendants.

_____

### REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters. Dkt. #21.

        Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, alleging violation of her constitutional right to association under the First Amendment to the United States Constitution and denial of equal protection as guaranteed under the Fourteenth Amendment to the United States Constitution after she failed to pass through security screening at the Wyoming Correctional Facility. Dkt. #19.

        Currently before the Court is plaintiff's motion for summary judgment. Dkt. #51. For the following reasons, it is recommended that plaintiff's motion be denied.

## BACKGROUND

<u>Plaintiff's Second Amended Complaint & Deposition Testimony</u>

On December 21, 2013, plaintiff, an African American woman, accompanied her sister, Mildred, to visit her brother, Zeddy, at the Wyoming Correctional Facility. Dkt. #19, ¶ 2 & Dkt. #51, p.29. Although Mildred visited Zeddy frequently, Wanda hadn't seen him in years. Dkt. #51, p.29.

When they walked up to security screening, Corrections Officer ("C.O."), Olszewski inquired about plaintiff's pants. Dkt. #51, pp.29 & 34. Mildred informed C.O. Olszewski that plaintiff's pants were spandex. Dkt. #51, p.29. Plaintiff was informed that spandex was not allowed. Dkt. #19, ¶ 9. Mildred went back to her car to obtain paperwork verifying that she had undergone hip surgery before she could pass through security and to bring plaintiff another pair of pants. Dkt. #51, p.29-30.

While she was waiting for Mildred to return from the car, plaintiff observed a young white woman enter the facility wearing shiny black spandex pants with creases. Dkt. #51, pp.33 & 39-40. When the C.O. asked if her pants were spandex, she agreed, and was informed that she could not go through the metal detector. Dkt. #51, p.33. The woman inquired why, arguing that she was wearing pants. Dkt. #51, p.33. The corrections officer responded that she had responded affirmatively when asked if she was wearing spandex. Dkt. #51, p.33. The white woman told the C.O. that they were not spandex and was allowed to go through the metal detector. Dkt. #51, pp.33 & 40.

Plaintiff changed into the pants Mildred had brought in from the car and attempted to go through the metal detector, but the metal detector went off. Dkt. #51, p.30. Plaintiff adjusted the pants, which were too large for her, and attempted to go through the metal detector a second time, but the metal detector went off again. Dkt. #51, p.30. Mildred informed the C.O. that a buckle was setting of the metal detector and asked the C.O. to use the wand on plaintiff, as they had observed the C.O.'s doing to other visitors, but the C.O. refused. Dkt. #51, pp.30, 36 & 38.

Mildred went through the metal detector and then passed her long, black leather coat to plaintiff, at which point the C.O. told Mildred to go upstairs. Dkt. #51, pp. 30-31 & 38. Plaintiff went into the bathroom, took off the pants, and put the coat on. Dkt. #51, p.30. When she exited the bathroom, she was the only visitor waiting to get through security. Dkt. #51, p.30. Plaintiff testified that the C.O.s were snickering as she walked up to the metal detector, placed the pants in a bin to be searched, and was informed that she could not go through the metal detector with her coat on. Dkt. #19, ¶ 12 & Dkt. #51, pp.31 & 38. Plaintiff protested that the C.O.s saw Mildred give plaintiff the coat and informed the officers that she didn't have anything on under the coat, but the C.O. repeated that she could not walk through wearing the coat. Dkt. #51, pp.31 & 38. Plaintiff testified that she was only wearing a shirt and panties under the coat. Dkt. #51, pp.31 & 38. Plaintiff discovered Mildred's keys in the coat pocket and returned to the car to wait for her sister. Dkt. #51, p.32.

Plaintiff's second amended complaint alleges that "defendants acted maliciously and with great disrespect and ridicule while they all laughed and appeared

-3-

intent on abusing me and obtaining sexual gratification from having me undress and humiliated." Dkt. #19, ¶ 18.

### Defendants' Declarations

Defendants each submitted a declaration regarding visitor screening procedures at the Wyoming Correctional Facility. Dkt. ##54-57. They each declare that they were assigned to the front lobby screening potential visitors for admission into the facility during December of 2013.

Visitors are permitted multiple chances to pass through the metal detector, but are not allowed to pass through the metal detectors wearing coats, which are inspected by hand. If a visitor cannot clear the metal detector after several attempts, corrections officers may use a handheld metal detector to determine what is causing the metal detector to go off. Visitors are given the opportunity to remove offending objects and change clothes in order to pass through the metal detector. If the corrections officers are unable to determine why the metal detector is going off, the visitor will not be permitted to enter the facility. Visitors may also be required to change out of inappropriate clothing.

None of the defendants have any specific recollection of plaintiff or the events of December 21, 2013. However, each of the defendants deny ever requiring or witnessing a visitor pass through the metal detector wearing only her underwear. Defendants also deny ever behaving or witnessing another corrections officer behaving in the manner described by plaintiff in her second amended complaint.

**DISCUSSION AND ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Fed.R.Civ.P. 56(f) permits the Court to grant summary judgment against the movant, provided that the movant has notice of the grounds upon which judgment is granted and an opportunity to present evidence.  *Obsession Sports Bar & Grill, Inc. v. City of Rochester*, 235 F. Supp.3d 461, 466 (W.D.N.Y. 2017).  Such a "*sua sponte* award of summary judgment may well be appropriate if it is clear that all of the evidentiary material a party might submit is before the court and no material issue of fact exists." *Pugh v. Goord*, 345 F.3d 121, 124 (2d Cir. 2003).

A district court may not make credibility determinations, weigh evidence, or draw inferences from facts on a motion for summary judgment; such functions belong to a jury, not a judge. *Manganielli v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). In the instant case, it is for a jury to determine whether to believe plaintiff's recitation of events or defendants' denial of those events. Moreover, defendants are not entitled to summary judgment with respect to plaintiff's First Amendment claim as "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation." *Mills v. Fischer*, 497 Fed. Appx. 114, 2012 WL 4215891, at *2 (2d Cir. 2012), *cert. denied*, 568 U.S. 1170 (2013).  Similarly, defendants are not entitled to summary judgment with respect to plaintiff's Equal

Protection claim because a jury could determine, based upon plaintiff's recitation of events, that defendants enforced a prohibition against spandex[1] with respect to plaintiff, a black woman, while permitting a white woman wearing spandex to enter the facility.  *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) (To establish a violation of equal protection based on selective enforcement, a plaintiff must demonstrate that she was selectively treated, as compared to others similarly situated, based upon an impermissible consideration such as race).

## **CONCLUSION**

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment (Dkt. #51), be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

---

[1] It is unclear whether this is an actual rule.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:     Buffalo, New York**
**October 25, 2017**

       *s/ H. Kenneth Schroeder, Jr.*
       **H. KENNETH SCHROEDER, JR.**
       **United States Magistrate Judge**